UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FERNANDO ITURRALDE                          CIVIL ACTION

VERSUS                                      NO: 05-330

THE SHAW GROUP, INC.                        SECTION: R


**ORDER AND REASONS**

Before the Court are two motions brought by defendant The
Shaw Group, Inc. ("Shaw"): (1) motion for reconsideration of a
partial denial of summary judgment;[1] and (2) motion to dismiss
plaintiff Fernando Iturralde's disability discrimination claim,
or in the alternative, motion *in limine* to preclude trial
evidence regarding any acts of disability discrimination.[2] For
the following reasons, the Court grants defendant's motions.


**I.    BACKGROUND**

This case arises out an employment dispute, the detailed
facts of which can be found in the Magistrate Judge's Report and
Recommendation,[3] adopted by Chief Judge Ralph E. Tyson of the

_____

[1]    R. Doc. 100.

[2]    R. Doc. 111.

[3]    R. Doc. 78.

Middle District of Louisiana.[4] The case was reassigned to this Court following the death of Chief Judge Tyson.[5] In an October 20, 2011 Scheduling Order, the Court indicated that non-evidentiary motion practice was closed.[6]

In the first of its motions,[7] defendant seeks reconsideration of Chief Judge Tyson's partial denial of summary judgment, dated March 24, 2009.[8] The Judge adopted *in extenso* the Magistrate Judge's Report and Recommendation, which denied summary judgment as to plaintiff's claims for (1) termination motivated by race, brought under 42 U.S.C. § 1981; (2) termination motivated by plaintiff's association with his disabled wife and daughter, brought under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12112(b)(4); (3) conversion;

---

[4]     R. Doc. 83.

[5]     R. Doc. 94.

[6]     R. Doc. 99.

[7]     R. Doc. 100.

[8]     R. Doc. 83.

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 2 of 28

and (4) intentional infliction of emotional distress.[9] Plaintiff opposes the motion.[10]

In the second of its motions,[11] defendant moves for dismissal of plaintiff's ADA claim based on his failure to exhaust his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), as required by the ADA. In the alternative, defendant seeks a declaration precluding plaintiff from presenting trial evidence regarding any acts of disability discrimination. Plaintiff opposes this motion.[12]

## II. MODIFICATION OF THE SCHEDULING ORDER

Defendant filed both motions after non-evidentiary motion practice had passed,[13] so considering the motions would require that the Court alter its October 20, 2011 Scheduling Order.

---

[9]    *See* R. Doc. 78. The Magistrate Judge also recommended, and the District Court Judge awarded, partial summary judgment to Shaw with respect to Iturralde's: (1) failure to promote, retaliation, and hostile work environment claims, brought under § 1981; (2) failure to promote and retaliation claims, brought under the ADA; and (3) state law defamation claim. *See* R. Docs. 78, 83.

[10]    R. Doc. 102.

[11]    R. Doc. 111.

[12]    R. Doc. 113.

[13]    *See* R. Doc. 99 (Scheduling Order); R. Doc. 100 (motion to reconsider); R. Doc. 111 (motion to dismiss).

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 3 of 28

Federal Rule of Civil Procedure 16(b) provides that scheduling orders "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b). "What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case." 6A Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1522.2 (3d ed.) (noting that, absent some showing of why an extension is warranted, "the scheduling order controls").

In its motion to reconsider, defendant contends that "[r]econsideration of the first [J]udge's ruling will help this Court more fully appreciate plaintiff's remaining claims[,]" and that, in fact, reconsideration "will lead to a resolution of all issues in this case, thereby eliminating the need for the trial[.]"[14] The Court's October 20, 2011 Scheduling Order had set trial for the week beginning March 19, 2012, but the trial date had to be continued.[15] The press of trial is therefore no longer a factor. And while defendant's motions were untimely raised, plaintiff responded on the merits, thus permitting the Court to consider both sides' positions. Finally, if plaintiff's failure to exhaust administrative remedies before bringing suit under the ADA strips the Court of subject matter jurisdiction over that

---

[14]    R. Doc. 100-1 at 3.

[15]    R. Doc. 116.

4

claim - a live question in the Fifth Circuit[16] - then the Court would be obligated to dismiss the claim notwithstanding the untimeliness of the motion. *See* Fed. R. Civ. P. 12(h)(3); *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 467 (5th Cir. 2009). For these reasons, and because it finds no prejudice to plaintiff, the Court will take up defendant's motions, notwithstanding the Scheduling Order ending motions practice.[17]

## III. MOTION TO DISMISS

### A. Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that

---

[16]    *See* Part III, *infra*.

[17]    For examples of courts extending deadlines for filing dispositive motions upon a showing of good cause, see *Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc.*, 23 F.3d 564 (1st Cir. 1994); *Greenawalt v. Sun City West Fire Dist.*, 250 F. Supp. 2d 1200 (D. Ariz. 2003); *Eischeid v. Dover Const., Inc.*, 217 F.R.D. 448 (N.D. Iowa 2003); *Anderson v. City of Dallas, Texas*, 210 F.R.D. 579 (N.D. Tex. 2002); *Crane Const. Co. v. Klaus Masonry*, 71 F. Supp. 2d 1138 (D. Kan. 1999); *Tran v. Captain Glyn, Inc.*, 909 F. Supp. 727 (D. Haw. 1995); *City of Chanute, Kan. v. Williams Natural Gas Co.*, 743 F. Supp. 1437 (D. Kan. 1990), *order aff'd on other grounds*, 955 F.2d 641 (10th Cir. 1992).

5

the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S. Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

**B.   Discussion**

6

Shaw contends that because plaintiff has failed to exhaust his administrative remedies, as required by the ADA,[18] his disability discrimination claim must be dismissed. Plaintiff does not dispute that he has not exhausted his administrative remedies, nor that exhaustion is an ADA requirement. Rather, he argues that defendant is now estopped from raising its failure-to-exhaust defense because it waited years after plaintiff filed suit to bring this motion.

There is disagreement in the Fifth Circuit as to whether the exhaustion requirement is merely a prerequisite to suit, and thus subject to equitable defenses like waiver and estoppel, or whether it is a requirement that implicates the Court's subject matter jurisdiction. Neither the Supreme Court nor the Fifth Circuit sitting *en banc* has ruled that the exhaustion requirement is subject to waiver or estoppel, and different Fifth Circuit panels have disagreed about the answer. *See Pacheco v. Mineta*, 448 F.3d 783, 788 n. 7 (5th Cir. 2006) (collecting cases but not resolving the split).

---

[18] *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 285-86 (2002) ("Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII of the Civil Rights Act of 1964 when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability.... Accordingly, the provisions of Title VII defining the EEOC's authority provide the starting point for our analysis.").

7

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 7 of 28

In this case, however, the Court need not take a position because plaintiff does not have a valid waiver or estoppel argument to make. Defendant clearly preserved its failure-to-exhaust defense in its answer,[19] and now rightfully seeks dismissal under Rule 12(b)(6). *See Taylor v. United States Treasury Dep't, IRS*, 127 F.3d 470, 478 n.8 (5th Cir. 1997) ("Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust administrative remedies."); 5C Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1360 (3d ed.) ("Rule 12(b)(6) also has been used to make a motion to dismiss because of a plaintiff's failure to exhaust administrative remedies[.]"). Rule 12(h) expressly preserves Rule 12(b)(6) motions from Rule 12's waiver mechanism, and thus, a defendant may bring a motion to dismiss based on plaintiff's failure to state a claim even after filing a responsive pleading. *See* Fed. R. Civ. P. 12(b)(6), (h)(2); 5C Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1361 (3d ed.) (discussing waiver under Rule 12 and collecting cases).

Plaintiff's estoppel argument is equally without merit. To invoke equitable estoppel against a private party, a litigant must establish the four traditional elements of the doctrine: (1) that the party to be estopped was aware of the facts; (2) that the party to be estopped intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have

---

[19]     R. Doc. 6 at 3.

knowledge of the facts; and (4) that the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury. *Mangaroo v. Nelson*, 864 F.2d 1202, 1204 (5th Cir. 1989). Plaintiff has not established any of the above elements, nor even attempted to do so. The third element poses the most obvious hindrance since plaintiff, responsible for exhausting his administrative remedies, obviously knew that he had failed to do so when he filed suit. The Court is aware of no law indicating that, absent a valid waiver or estoppel argument, a defendant may lose his right to move for dismissal based solely on the passage of time between his responsive pleading and motion to dismiss. *Cf. Land v. Prudhomme Oil Co.*, 3 F.R.D. 377 (W.D. La. 1944) ("A motion to dismiss because of failure to state a claim upon which relief can be granted is always timely, even just before trial."). As plaintiff has failed to cite any law to support his position, his wrongful termination claim under the ADA is hereby dismissed.

## IV.  MOTION FOR RECONSIDERATION

### A.  Standard

Federal Rule of Civil Procedure 54(b) provides that an order that adjudicates fewer than all the claims among all the parties "may be revised at any time" before the entry of a final judgment. Fed. R. Civ. P. 54(b). As Rule 54 recognizes, a

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 9 of 28

district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981). Although the district court's discretion in this regard is broad, *see Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1414-15 (5th Cir. 1993); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) (en banc), it is exercised rarely to avoid the perpetual reexamination of orders and the resulting burdens and delays. *See generally* 18b Wright & Miller, *Fed. Prac. & Proc. Juris.* § 4478.1 (2d ed.).

The general practice of this Court has been to evaluate motions to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter or amend a final judgment.[20] In this case, however, the Court deems the more liberal Rule 54 standard appropriate for several reasons: First, the Court is not reexamining its own Order in this case, and it would have to spend substantial time preparing for trial even if the motion were not taken up. Second, although the District Court Judge adopted the Magistrate Judge's Report, the analysis was that of the Magistrate rather than an Article III judge and

---

[20] *See, e.g.*, *Lacoste v. Pilgrim Int'l*, 2009 U.S. Dist. LEXIS 46752, at *23 (E.D. La. 2009); *Rosemond v. AIG Ins.*, 2009 U.S. Dist. LEXIS 37571, at *6 (E.D. La. 2009).

10

therefore may be entitled to less deference. Third, the summary judgment motion was decided three years ago, and judicial developments in the interim can provide a disposition more in line with modern precedents - even if the Magistrate Judge's analysis does not include the "manifest error of law" required by Rule 59. *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (describing the Rule 59 standard).

## B.  Louisiana Employment Discrimination Law

Plaintiff did not affirmatively state the sources of law under which he seeks relief in his complaint, and Shaw's original motion for summary judgment referred to the ADA and cases interpreting that statute.[21] In his opposition, plaintiff also cited law interpreting the ADA, and never once mentioned the Louisiana Employment Discrimination Law (LEDL), La. R.S. § 23:301, *et seq.*, as an additional ground for relief. In a footnote to his Report, the Magistrate Judge noted the following:

> Plaintiff did not allege a claim or make reference to [the LEDL]. Nor did the plaintiff cite or discuss these statutes in his opposition memoranda. Plaintiff cited federal law related to his race discrimination claims and the ADA provision prohibiting associational disability discrimination. Consequently, this report does not address any claim under the [LEDL].[22]

---

[21]    R. Doc. 61.

[22]    R. Doc. 78 at 4 n.6.

11

Plaintiff now points to the last sentence above and contends that the Magistrate allowed an LEDL claim to withstand summary judgment, since defendant did not move on that ground. Defendant, meanwhile, points to the first two sentences in the quoted passage and argues that the Magistrate clearly held that the plaintiff had failed to clarify the nature of his claims despite ample opportunity to do so, and therefore, could not pursue relief under the LEDL. The Court finds that the defendant's reading of the Magistrate Judge's Report is the correct one, that plaintiff had multiple opportunities to make plain his asserted grounds for relief, and that to allow plaintiff to alter his theory of recovery now would be unreasonable.

Even if an LEDL claim had survived to this date, however, it would be a losing one. The ADA clearly forbids covered entities from "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]" 42 U.S.C. § 12112(b)(4). The LEDL conspicuously lacks comparable language: Indeed, the forbidden practices delineated in the relevant statutory section concern only workplace discrimination against a "qualified disabled person." La. R.S. § 23:323(B)(1) – (10). Plaintiff has provided no case indicating that the federal protection against "association disability" discrimination extends to the LEDL, nor

12

has this Court located such a case. Not only, then, would the maxim *expressio unius est exclusio alterius* seem to apply here, but so would the federal policy of judicial restraint when interpreting state law. *See, e.g., Johnson v. Sawyer*, 47 F.3d 716, 729 (5th Cir. 1995) (en banc) ("We have long followed the principle that we will not create innovative theories of recovery or defense under local law, but will rather merely apply it as it currently exists.") (internal quotations omitted); 19 Wright & Miller, *Fed. Prac. & Proc. Juris.* § 4507 (2d ed.) ("Nor is it the function of the federal court to expand the existing scope of state law.").

## C. Intentional Infliction of Emotional Distress

In order to prove intentional infliction of emotional distress under Louisiana law, a plaintiff must prove that (1) the conduct was extreme and outrageous; (2) the emotional distress suffered was severe; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result. *White v. Monsanto*, 585 So. 2d 1205, 1209 (La. 1991). The behavior must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Indeed, "disciplinary action and conflict in a pressure-packed

13

workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable." *Id.* at 1210.

In this case, neither the alleged racial harassment nor the circumstances surrounding plaintiff's termination rise to the requisite level of outrageousness. As to the former, plaintiff's allegations of racial harassment include a handful of comments that Tim Barfield, a superior at Shaw, uttered over two years. The primary allegations concern Barfield's introductions of Iturralde as "Fernando, ... the Cuban," references to Iturralde's having come to the United States by boat, and comments that Iturralde's recently deceased brother was a famous jai alai coach[23] (apparently, he was actually a softball coach). Although in poor taste, these remarks fall well short of the "deliberate, repeated harassment over a period of time" that typify workplace IIED claims. *White*, 585 So. 2d at 1210; *see also McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007) (affirming summary judgment for the defendant where the plaintiff, a black city police officer, suffered harassment by a white subordinate who "twice [threw] wadded-up paper in her face and [] repeatedly enter[ed] her office only to stare at her and laugh in mocking derision"); *Baker v. FedEx Ground Package System Inc.*, 278 Fed. Appx. 322 (5th Cir. 2008) (affirming the denial of an IIED claim when plaintiff asserted that a coworker subjected her to "several

---

[23]    R. Doc. 69-1 at 18-19.

14

racially insensitive comments" based on her race, including remarks that "whites rule" and that "blacks cannot report to whites"); *Charles v. Jetblue Airways Corp.*, 2009 U.S. Dist. LEXIS 13341 (E.D. La. 2009) (racial slurs from fellow employees insufficient to sustain IIED claim); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So. 2d 1049 (La. App. 3d Cir. 1992) (evidence that employer called an employee fat and stupid, cursed, shouted, and denigrated women did not rise to the level of extreme and outrageous conduct).

Neither may plaintiff's allegations surrounding the circumstances of his termination suffice to save his IIED claim from summary judgment. Iturralde alleges that Shaw executives knew of his wife's and daughter's health problems and the rising medical bills that the company was paying. He further alleges that "defendant played upon this with the expectation that the audit would reveal problems with plaintiff's expense reports, and this is what constitutes extreme and outrageous conduct." As will be discussed *infra*, plaintiff has failed to create a genuine issue of fact that defendant's stated reasons for terminating Iturralde were anything but genuine. Thus, Iturralde has not created issues of fact sufficient for a jury to find that Shaw even acted wrongfully - much less in an "extreme and outrageous" manner. Summary judgment is therefore appropriate.

15

**D. Conversion**

Iturralde alleges that, following his termination from Shaw, the company held on to various documents, books, and other materials that he had brought into his office, finally returning them in July 2007. He contends that the wrongful withholding constituted a conversion of his property.

"A conversion is an act in derogation of the plaintiff's possessory rights and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time." *Talley v. Livingston Parish Sheriff's Office*, 2010 La. App. Unpub. LEXIS 233, at *7 (La. App. 1st Cir. 2010) (citing *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985)). Conversion requires not a conscious wrongdoing, but merely an intent to exercise dominion or control over goods that is inconsistent with another's rights. *La. State Bar Ass'n v. Hinrichs*, 486 So. 2d 116, 121 (La. 1986)). As in Iturralde's case, a conversion need not require a wrongful taking, but can exist when possession is merely withheld from the owner or possessor. *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998) (describing seven circumstances of conversion).

Under Louisiana law, "[t]he traditional damages for conversion consist of the return of the property itself, or if the property cannot be returned, the value of the property at the

16

time of the conversion." *Qualy*, 475 So. 2d at 761. A defendant may also be liable for mental anguish and inconvenience arising from the lost use of the property converted. *La. Specialty Hosp., LLC v. Adams*, 2010 U.S. Dist. LEXIS 91957, at *6 (E.D. La. 2010) (citing *Broussard, Bolton, Halcomb & Vizzier v. Williams*, 796 So. 2d 791, 796 (La. App. 3d Cir. 2001)); *Navratil v. Smart*, 400 So. 2d 268, 273 (La. App. 1st Cir. 1981) (awarding $500 in damages for shock, humiliation, and inconvenience); *Boisdore v. Int'l City Bank & Trust Co.*, 361 So. 2d 925, 932-33 (La. App. 4th Cir. 1978) (collecting cases in which plaintiff has proven mental anguish as damages from a conversion).

Shaw argued in support of its summary judgment motion that plaintiff introduced no evidence that he suffered any damages as a result of Shaw's alleged conversion.[24] While Iturralde contended in his opposition that he suffered inconvenience and loss of use of these materials,[25] he submitted no summary judgment evidence corroborating the claim. Indeed, his supporting affidavit indicates that he suffered various harms "as a result of Shaw's harassment and retaliation,"[26] but nothing about damages attributable to Shaw's alleged conversion of his

---

[24]    R. Doc. 74 at 8.

[25]    R. Doc. 70 at 28.

[26]    R. Doc. 69-7 at 4.

17

property. While Louisiana courts do not discuss conversion in terms of its constituent elements, plaintiff nevertheless must show damages to survive defendant's motion for summary judgment. *Cf. Haro v. Ibarra*, 180 Cal. App. 4th 823, 835, (Cal. App. 2d Dist. 2009) (damages an element of conversion in California); *Trifad Entertainment, Inc. v. Anderson*, 36 P. 3d 363, 369 (Mont. 2001) (damages an element of conversion in Montana); *Urbanek v. All State Home Mtge. Co.*, 898 N.E. 2d 1015, 1021 (Ohio App. 8th Dist. 2008) (damages an element of conversion in Ohio); *United Mobile Networks, L.P. v. Deaton*, 939 S.W. 2d 146, 147 (Tex. 1997) (damages an element of conversion in Texas); *Cross v. Berg Lumber Co.*, 7 P. 3d 922, 929-30 (Wyo. 2000) (damages an element of conversion in Wyoming). Because he failed to do so, the Court grants summary judgment on his conversion claim.

**E. Termination Based on Race**

Plaintiff's unlawful termination claim, brought under 42 U.S.C. § 1981, also originally survived summary judgment. In his Report, the Magistrate Judge ostensibly conflated plaintiff's allegations of wrongful termination *based on race* (under § 1981), and wrongful termination *based on disability* (under the ADA). The Report held that there was sufficient summary judgment evidence to support an inference that a Shaw superior with discriminatory

18

intent played a role in the decision to fire plaintiff.[27] This, coupled with "the evidence regarding Barfield's comments about plaintiff's race and his awareness of the disabling conditions of the plaintiff's family" and "the timing and circumstances surrounding the audit of the plaintiff's expense reports and his termination" were apparently deemed sufficient for both plaintiff's § 1981 claim and ADA claim to survive. With plaintiff's ADA claim dismissed as a matter of law in this Order, and because the evidence supporting race discrimination must be examined independently of that supporting disability discrimination, the Court will examine only the evidence supporting plaintiff's § 1981 claim.

The standards for race discrimination claims brought under Title VII are the same as under § 1981. *Flanagan v. Aaron E. Henry Cmty. Health Servs. Ctr.*, 876 F.2d 1231, 1233-34 (5th Cir. 1989). Thus, when a plaintiff attempts to prove allegations of discrimination through indirect or circumstantial evidence, the Court considers the claim under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), and *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305 (5th Cir. 2004).

---

[27]    R. Doc. 78 at 27.

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 19 of 28

Under the modified *McDonnell Douglas* approach, the plaintiff has the initial burden of making a *prima facie* showing of discrimination. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Rachid*, 376 F.3d at 312. A plaintiff satisfies this burden by showing that (1) he is a member of a protected group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated differently from those outside the protected class. *See Frank v. Xerox Corp.*, 347 F.3d 130, 137 (5th Cir. 2003); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).

Here, Shaw has apparently conceded that Iturralde has made a *prima facie* showing of discrimination. Thus, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006). This burden "is one of production, not persuasion ... [and] can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If a defendant can produce such evidence, the presumption of discrimination dissolves. *Id.* at 142-43.

Shaw has satisfied its burden here, contending that Iturralde was fired for fraudulent accounting of his business expenses. The presumption therefore falls away, *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007), and the burden shifts

back to the plaintiff to prove either "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." *Rachid*, 376 F.3d at 312 (internal quotation marks omitted). When taking the pretext route, a plaintiff can meet his burden and survive summary judgment "by producing circumstantial evidence sufficient to create a fact issue as to whether the employer's nondiscriminatory reasons are merely pretext for discrimination." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005). Ultimately, the question is "whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is correct." *Reeves*, 530 U.S. at 147 (internal quotations and citations omitted). In deciding the question, the Court is to consider "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case[.]" *Id.* at 148. The Fifth Circuit is clear that "there will be cases where a plaintiff has both established a *prima facie* case and set forth sufficient

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 21 of 28

evidence to reject the defendant's explanation, yet 'no rational factfinder could conclude that the action was discriminatory.'" *Price v. Fed. Express Corp*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148-49). In such case, summary judgment is appropriate. *Id.*

The undisputed facts are as follows: By late March 2004, Iturralde had fallen behind on his company credit card payments,[28] and his card was eventually cancelled. Iturralde began pressuring the Shaw travel department to reinstate his card,[29] which raised red flags among Shaw personnel.[30] Shaw's internal audit group audited Iturralde's expense reports for the preceding year and determined that some of the expenses were for personal items for which Iturralde was not entitled to reimbursement.[31] The group submitted a report to Shaw's executives indicating the personal charges that plaintiff had submitted, at least one of which was billed to a client.[32] The audit group also noted that the headers of several receipts

---

[28]    R. Doc. 61-10 at 24-25; 61-11 at 1; 61-15 at 21.

[29]    R. Doc. 61-10 at 24-25; 61-11 at 1; 61-15 at 21.

[30]    R. Doc. 61-15 at 21.

[31]    R. Doc. 61-15 at 7-9. It is not definitively clear from this record who ordered the audit, but the evidence points to Scott LaGrange, the division's CFO. R. Doc. 61-15 at 21, 37. There is no evidence in the record that Barfield was involved in the decision to audit Iturralde's expense reports.

[32]    R. Doc. 61-15 at 6, 13, 16; 61-16 at 10.

22

included with Iturralde's expense reports had been torn off -
apparent evidence that Iturralde was trying to conceal the nature
of the charges for which he sought reimbursement.

Iturralde's supervisor's supervisor, Malcolm Jarrell,
believed the information warranted Iturralde's termination,[33] and
he informed Human Resources of his position. Barfield, the only
Shaw employee as to whom Iturralde attempts to present evidence
of discriminatory intent, was informed of Jarrell's desire to
terminate Iturralde by the president of Shaw Environmental and
Infrastructure, Diana Ferguson.[34] Although Barfield admits that
he could have prevented the termination,[35] he indicated that he
would not do so and asked only that Iturralde receive an
opportunity to explain the auditors' findings.[36] Jarrell never
spoke with Barfield about the termination, but merely confirmed
through Human Resources that Barfield would not oppose it.[37]
Indeed, the reason Barfield was told in the first place of
Jarrell's intention to fire Iturralde is because Ferguson
perceived Barfield to be partial to Iturralde.[38]

---

[33]   R. Doc. 61-16 at 6-7.

[34]   R. Doc. 61-16 at 13.

[35]   R. Doc. 61-13 at 14.

[36]   R. Doc. 61-16 at 13.

[37]   R. Doc. 61-16 at 7.

[38]   R. Doc. 61-16 at 13.

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 23 of 28

Malcolm Jarrell, along with another Shaw Group superior, met with Iturralde to ask him about the questionable expense reports.[39] Iturralde admitted then and admits now that two expense reports contained at least three personal charges totaling more than $1500 (including a vacuum cleaner, four new automobile tires, and automobile maintenance purchased on his company credit card), as well as duplicate entries for airfare and hotel accommodations.[40] Plaintiff contended and continues to contend that his secretary submitted these expense reports, which plaintiff never signed,[41] without his approval. Jarrell did not believe Iturralde's excuse, given his apparent handwriting on the receipts and reports, the multiple dubious expenses, and the receipts whose headers had been removed before their submission for reimbursement.[42] At that meeting, after giving Iturralde an opportunity to explain the charges, Jarrell informed him that he was being terminated.[43]

Iturralde contends, notwithstanding the evidence of his improper requests for reimbursement, that Shaw's stated reasons

---

[39]   R. Doc. 61-16 at 9-11.

[40]   R. Doc. 61-4 at 10-12; 61-8 at 3-6, 7-8; 61-9 at 2-4, 6-7;  61-15 at 22, 35; 61-16 at 9-11.

[41]   R. Doc. 69-8 at 2; 69-9 at 3.

[42]   R. Doc. 61-16 at 7, 9-10.

[43]   R. Doc. 61-16 at 7, 9-10.

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 24 of 28

are mere pretext for race discrimination. Specifically, Iturralde argues that the expense reports were submitted by his secretary before he had the opportunity to review them for accuracy; that the audit group never questioned him during their investigation, nor sought to determine why the expense reports did not bear his signature; that the handwriting on the receipts and expense reports was not actually his own; and that he offered to reimburse Shaw for the improper expenses.

Considering "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case[,]" *Reeves*, 530 U.S. at 148, the Court finds that plaintiff has failed to present sufficient evidence for his claim to survive summary judgment. First, there is no evidence of pretext. Iturralde does not dispute that several personal expenses ineligible for reimbursement were submitted in violation of company policy. Other Shaw personnel, including Caucasian employees, who have reported fraudulent expenses in the past have similarly been terminated.[44] And even if the audit group, Jarrell, and others were incorrect in their belief that Iturralde intended to seek reimbursement to which he was not entitled, this alone would not be enough to create an issue of fact to survive summary judgment. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d

---

[44]    R. Doc. 61-12 at 10; 61-16 at 7.

25

1086, 1091 (5th Cir. 1995) ("Even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason.").

Moreover, even if plaintiff had presented evidence sufficient to create an issue of fact as to whether Shaw's stated reasons for termination were pretextual (which he has not), a rational factfinder could not conclude that *race* discrimination was a factor in Shaw's firing decision. *See Price*, 283 F.3d at 720; *Reeves*, 530 U.S. at 148-49. This is so for two reasons. First, the evidence does not create a triable issue of fact that Barfield was responsible for Iturralde's firing. The Magistrate Judge relied on, and plaintiff now points to, statements in Jarrell's affidavit[45] ("I did not speak with Tim Barfield about the termination decision. I confirmed through [H]uman [R]esources that Mr. Barfield would not impede the termination decision."); Ferguson's affidavit[46] ("I informed Tim Barfield of Mr. Jarrell's anticipated termination of Mr. Iturralde ... [and] Mr. Barfield said he would not [obstruct the termination], but he asked that Mr. Iturralde be given the opportunity to explain the audit findings."); Champney's deposition[47] (in which he admits speaking

---

[45]    R. Doc. 61-16 at 7.

[46]    R. Doc. 61-16 at 13.

[47]    R. Doc. 61-15 at 18-19, 21, 27, 32, 36 (deposition pages submitted out of order).

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 26 of 28

with Barfield about Jarrell's intention to fire Iturralde); and Barfield's deposition[48] (in which he admits that he believes he could have rehired Iturralde). This evidence establishes only that Barfield was aware of Jarrell's decision to fire Iturralde before Iturralde learned of his fate, and that Barfield pledged not to pose a hindrance; it *does not* support a conclusion that Barfield was in any way responsible for reaching the decision himself.

Second, there is insufficient evidence of racially[49] discriminatory intent. The nature of Barfield's comments, while tactless, did not evidence clear racial animus. Indeed, the remarks about plaintiff arriving in the United States on a boat, and about being the brother of a famous jai alai coach, were apparently made in jest and without any manifest ill intent. Aside from these few and isolated remarks, the evidence overwhelmingly indicates that Barfield was actually quite fond of Iturralde and that, at least until Iturralde's termination, the affection was reciprocated. Barfield had authorized a $33,000

---

[48]    R. Doc. 61-13 at 14.

[49]    The Supreme Court has observed that discrimination based "solely on the place or nation of [a plaintiff's] origin" is not actionable under § 1981. *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). And although the "line between national origin discrimination and racial discrimination is an extremely difficult one to trace[,]" *Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981), Iturralde has presented *no evidence* of his race; indeed, his affidavit states only that he is "of Cuban national origin." R. Doc. 69-7.

Case 3:05-cv-00330-SSV-AC   Document 122   05/01/12   Page 27 of 28

raise for Iturralde in the fall of 2003, and consented to Iturralde's enrollment in the ExecuCare supplemental health benefits program - a benefit that others of commensurate position within the Shaw heirarchy did not enjoy.[50] In fact, the uncontroverted evidence indicates that Barfield was informed of Iturralde's termination before Iturralde himself because Barfield was seen as partial to Iturralde, and Shaw personnel feared that Barfield would attempt to obstruct the termination.[51]

As there is no evidence of pretext, racial animus, or opportunity to act on that animus, the Court grants summary judgment on plaintiff's § 1981 claim.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motions to reconsider and to dismiss, and resolves all outstanding claims in defendant's favor. Judgment shall be entered for the defendant.

New Orleans, Louisiana, this 30th day of April, 2012

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[50]    R. Doc. 61-12 at 17; 61-13 at 22; 61-16 at 1, 4.

[51]    R. Doc. 61-16 at 13.

28